**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA,

v.

VANESSA VENCE-SMALL,
    *Defendant*.

No. 3:18-cv-00031 (JAM)

**ORDER DENYING MOTION FOR SENTENCE REDUCTION WITHOUT PREJUDICE**

    Vanessa Vence-Small is a prisoner of the Federal Bureau of Prisons (BOP) at the FCI

Hazelton secure female facility in West Virginia. In light of her particular vulnerability to the

rapidly spreading coronavirus ("COVID-19"), she moves under 18 U.S.C. § 3582(c)(1)(A) for a

reduction of her remaining term of imprisonment to a term of home confinement.

    Although Vence-Small states substantial grounds that may ultimately warrant relief, she

has not exhausted her remedies as section 3582(c)(1)(A) requires, and the law does not allow me

to excuse or waive the statute's requirements. Therefore, I will deny Vence-Small's motion

without prejudice to renewal.

**BACKGROUND**

    Vence-Small is serving a 30-month sentence of imprisonment following her guilty plea to

a charge of wire fraud. The guilty plea stemmed from her embezzlement of more than $1.1

million while working as a financial controller at a BMW car dealership. She began serving her

sentence in February 2019, and she is scheduled to be released from BOP custody in March

2021.

    By letter motion postmarked March 17, 2020, Vence-Small moved *pro se* for immediate

release to home confinement. Doc. #71. Her motion explained that "I have had a splenectomy,

1

which means I have no immune system," and "[m]y body cannot fight this Corona Virus." *Id.* at 2.[1]

On March 31, 2020, Vence-Small filed a similar application for relief with the warden at FCI Hazelton. Doc. #85-1 at 3-4. Her request form states: "Splenectomy was done in 2010. I do not have an immune system. I can die if I come in contact with COVID-19." *Id.* at 3. The form further states that her condition constitutes an "extraordinary + compelling reason that warrants a sentence reduction or to be placed on Home Confinement for the rest of my sentence." *Id.* at 4.

On April 1, 2020, counsel for Vence-Small filed a supplemental motion with the Court seeking Vence-Small's release under 18 U.S.C. § 3582(c)(1)(A)(i) due to the extraordinary and compelling reasons confronting the federal prison system as a result of the COVID-19 pandemic. Doc. #73. According to this motion, Vence-Small (age 52) is at significant risk of contracting and developing severe complications from the coronavirus not only because she has had a splenectomy that compromises her immune system but also because of her diabetes and hypertension. *Id.* at 1-4.

Vence-Small is one of approximately 500 inmates housed in close quarters at FCI Hazelton. Doc. #83 at 1. She is in a cell with one other roommate, and the facility does not have a separate dedicated area where an immunocompromised person could be housed. *Ibid.* Vence-Small insists that the prison conditions make it impossible to engage in proper social distancing and that a general lockdown at the facility due to the COVID-19 pandemic has aggravated her diabetes due to restrictions on food options. Doc. #79 at 2; Doc. #85 at 1.

---

[1] After receiving this motion at chambers, I ordered it filed on the docket under seal on March 24, 2020. Because the contents of the letter motion are germane to this ruling and because the contents do not disclose sensitive matters that are not already disclosed in other public filings in this case, the Clerk of Court shall forthwith unseal the letter motion, Doc. #71.

The parties do not dispute that Vence-Small's medical conditions place her at significantly heightened risk of contracting COVID-19 and of suffering serious or lethal complications.[2] The parties differ about whether the COVID-19 has infiltrated the female facility at FCI Hazelton. On the one hand, Vence-Small alleges that there are inmates who have become ill and are likely infected by COVID-19. Doc. #85 at 1. By contrast, the BOP's website reflects no reported infections among staff or inmates to date at FCI Hazelton, and the BOP has published a modified operating plan detailing its precautions against COVID-19 infections such as restricting inmate internal movement, screening of inmates and staff, and a prohibition on visitation.[3]

Attached to Vence-Small's motion is a memorandum from the U.S. Attorney General to the BOP Director, dated March 26, 2020, instructing the BOP to use its statutory authorities to consider inmates for early release to home confinement in light of the COVID-19 pandemic. Doc. #73-1. The memorandum states that "there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentence in home confinement rather than in BOP facilities." *Id.* at 1. The Attorney General's memorandum instructs the BOP to consider the totality of circumstances in considering an inmate for early release, including among other factors: (1) the age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines, (2) the security level of the facility, (3) the inmate's conduct in prison, (4) the inmate's demonstrated and verifiable reentry plan, and (5) the inmate's crime of conviction and danger posed by the

---

[2] *See also* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk html [https://perma.cc/4EBN-JFYN] (last visited Apr. 20, 2020) (noting people with diabetes or who are immunocompromised are at higher risk of severe illness from COVID-19).

[3] *See* Federal Bureau of Prisons, *BOP Implementing Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp [https://perma.cc/T6MB-G6GW] (last visited Apr. 20, 2020).

inmate to the community. *Id.* at 1-2; *see also* Doc. #82-2 (supplemental Attorney General memorandum of April 3, 2020).

According to the BOP's website, it has responded to the Attorney General's memorandum by "immediately reviewing all inmates who have COVID-19 risk factors," declaring that "[i]nmates do not need to apply to be considered for home confinement," because "[c]ase management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General," and "[t]he Department has also increased resources to review and make appropriate determinations as soon as possible."[4]

On April 6, 2020, I conducted a video hearing with counsel. The Government opposed Vence-Small's motion on the grounds that the victim of her crime opposes her early release and that she has not exhausted her remedies with the BOP. Doc. #76. On April 8, 2020, I entered an order stating that I would defer my ruling on the motion until at least April 14, 2020, to allow the warden at FCI Hazelton more time to consider Vence-Small's request for administrative relief. Doc. #84.

On April 9, 2020, Vence-Small's counsel filed a supplemental request-letter with the warden at FCI Hazelton to remind the warden of Vence-Small's prior request for relief, to describe how Vence-Small's medical condition makes her particularly vulnerable to COVID-19, to describe her reentry plan to be in quarantined home confinement at a family home in upstate New York, and to describe how she meets the criteria for transfer to home confinement in accordance with the Attorney General's guidance memoranda. Doc. #85-1 at 1-2.

---

[4] Federal Bureau of Prisons, *Correcting Myths and Misinformation about BOP and COVID-19*, https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19.pdf (last visited Apr. 20, 2020).

On April 17, 2020, the warden denied Vence-Small's request. Doc. #86-1. It is apparent, however, that the warden misunderstood the basis for Vence-Small's request. The staff recommendation and warden's decision approving the staff recommendation incorrectly assumes that Vence-Small sought release on the ground that she has a "Debilitated Medical Condition" that renders her disabled.[5] Not surprisingly, given that Vence-Small has not claimed that she is presently disabled, the warden denied this relief. The warden's decision does not mention anything about Vence-Small's request for relief on the ground of her vulnerability to COVID-19. Nor does it apply any of the standards that the Attorney General has directed the BOP to apply when considering this type of request. The warden's decision advises Vence-Small that she may appeal the decision in accordance with BOP administrative remedy procedures. *See* 28 C.F.R. § 571.63.

## DISCUSSION

Federal law allows a court to grant a motion to reduce a federal prison inmate's sentence if there are "extraordinary and compelling" reasons to do so. 18 U.S.C. § 3582(c)(1)(A)(i).[6]

---

[5] *See* BOP Program Statement 5050.50(3)(b) (describing "Debilitated Medical Condition" that may warrant a sentence reduction to include being "[c]ompletely disabled" or "[c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours"). It is true that Vence-Small checked the box "Debilitated Medical Condition" on her Request for Reduction in Sentence Form. But the form did not provide a box for "extraordinary and compelling reasons" or any language indicating the defendant wishes the BOP to move for a reduction in sentence on her behalf, and Vence-Small plainly stated what relief she was requesting and why. Doc. #85-1 at 3-4.

[6] Section 3582(c)(1)(A)(i) provides in full:

(c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--
    (1) in any case--
        (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
            (i) extraordinary and compelling reasons warrant such a reduction; . . . .

Previously it was only the BOP that could file a motion for sentence reduction, but Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), in order to afford a defendant as well as the BOP the right to file a motion for sentence reduction.

Importantly, however, Congress conditioned the right of a defendant to file a motion for sentence reduction upon the defendant's first applying to the prison warden to file a motion on the defendant's behalf. Specifically, the law allows for a defendant's motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The Government argues that I should deny Vence-Small's motion on the ground that she has not exhausted her remedies as required under section 3582(c)(1)(A). Federal judges in Connecticut and elsewhere have sharply divided on whether a court may excuse or "waive" section 3582's exhaustion requirement. *See, e.g.*, *United States v. Smith*, 2020 WL 1903160, at *3 (D. Conn. 2020) (citing cases); *United States v. Vigna*, 2020 WL 1900495, at *5 (S.D.N.Y. 2020) (same).

The Supreme Court recognizes a basic distinction between *statutory* and *judicial* exhaustion requirements. On the one hand, "[w]here Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). On the other hand, "where Congress has not clearly required exhaustion, sound judicial discretion governs," although "even in this field of judicial discretion, appropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard in a federal court requires fashioning

of exhaustion principles in a manner consistent with congressional intent and any applicable statutory scheme." *Ibid.*

More recently, in *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court made clear that judges are not at liberty to add judge-made exceptions to exhaustion requirements that are made mandatory by statute. In *Ross*, the Supreme Court reversed a lower court's recognition of an "extra-textual" exception for "special circumstances" to the requirement of the Prison Litigation Reform Act ("PLRA") that a prisoner exhaust available administrative remedies before challenging prison conditions by means of a civil rights action in federal court. In light of the fact that "[s]tatutory interpretation, as we always say, begins with the text," and that the language of the text was "mandatory," the Supreme Court concluded that the "mandatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Id.* at 1856.

In so ruling, the Supreme Court explained that "[n]o doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions," but that "a statutory exhaustion provision stands on a different footing," because "[t]here, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Id.* at 1857. It follows that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion," and "[t]ime and again, this Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous textual requirements." *Ibid.*

The Supreme Court's decision in *Ross v. Blake* dictates the outcome here because section 3582(c)(1)(A) creates a statutory exhaustion requirement. Vence-Small relies on a statement from the Second Circuit's decision in *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019), that

"[e]ven where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." *Id.* at 118. But *Washington* did not concern statutory exhaustion at all; it concerned and applied a *judicial* exhaustion requirement. Accordingly, its pronouncement about statutory exhaustion requirements is dicta.

Nor does the dicta in *Washington* acknowledge the Supreme Court's decision in *Ross* but it instead relies on the Supreme Court's decision in *McCarthy*, which was a judicial exhaustion case. Although *McCarthy* elaborates on many reasons why judges in their discretion may excuse or waive judicial exhaustion requirements, it does not suggest that judges have similar discretion to excuse or waive statutory exhaustion requirements. Accordingly, the Second Circuit's decision in *Washington* does not properly support a court's waiver of a statutory exhaustion requirement. *See United States v. Demaria*, 2020 WL 1888910, at *3 (S.D.N.Y. 2020); *United States v. Schultz*, 2020 WL 1872352, at *5 (W.D.N.Y. 2020).

Section 3582(c)(1)(A) doubtlessly creates a type of mandatory statutory exhaustion requirement. A defendant must either fully exhaust all of the BOP's administrative appeal requirements or, in the alternative, a defendant must wait for 30 days after seeking relief from the prison warden before filing a motion for relief with a court. The 30-day waiting time rule functions as an exception to a plenary exhaustion requirement, and the statute does not invite judges to craft additional exceptions.

Some decisions have reasoned that courts are free to make equitable exceptions to section 3582(c)(1)(A)'s exhaustion requirement because it is not jurisdictional in nature but rather a claims-processing rule. *See, e.g.*, *United States v. Russo*, 2020 WL 1862294, at *4-*5 (S.D.N.Y. 2020); *United States v. Haney*, --- F. Supp. 3d. ---, 2020 WL 1821988, at *2-*3 (S.D.N.Y. 2020). The problem with this reasoning is that the PLRA exhaustion requirement that was at issue in

8

*Ross* is also not jurisdictional. *See Woodford v. Ngo*, 548 U.S. 81, 101 (2006). Still, however, the Supreme Court concluded in *Ross* that courts may not make exceptions to the PLRA's statutory exhaustion rule.

Nor is the 30-day waiting time requirement of section 3582(c)(1)(A) a stand-alone claims processing rule. It is an integral part of the statute's exhaustion requirement, functioning as an exception to what would otherwise be a plenary exhaustion requirement. It would be anomalous to conclude that, if Congress decides to soften a plenary exhaustion requirement by allowing for an equitable exception (*e.g.*, a 30-day waiting time rule), then this opens the door for courts to create their own exception-to-the-exception (*e.g.*, a *less*-than-30-day waiting time rule).

Of course, the 30-day waiting time rule pre-dates the unprecedented and fast-moving events of the COVID-19 emergency. In light of these emergency circumstances, some judges have waived the 30-day rule, reasoning that a waiver is consonant with Congress's more general objective when enacting the rule to ensure that a defendant receive meaningful and prompt judicial consideration of a relief request even if the defendant has not fully exhausted administrative remedies. *See, e.g.*, *Russo*, 2020 WL 1862294, at *6; *Haney*, 2020 WL 1821988, at *4 (S.D.N.Y. 2020).

This reasoning is not persuasive. Even if Congress did not anticipate the extraordinary circumstances of the COVID-19 pandemic, Congress could well have foreseen that medical or safety emergencies might arise for a single defendant or group of defendants to seek an immediate sentence reduction and release from imprisonment. Still, Congress did not create an emergency exception to the exhaustion requirement.

Indeed, Congress foresaw one type of emergency by specifying that "in the case of a defendant diagnosed with a terminal illness" a defendant must be notified of and have an

opportunity to apply to the warden to file a motion for sentence reduction within 72 hours of the diagnosis, and the warden must act upon the defendant's request within 14 days. *See* 18 U.S.C. § 3582(d)(2)(A). But Congress chose not to create an emergency exception to the 30-day waiting time rule, even in the harrowing circumstances of a diagnosis of terminal illness.

One court has reasoned that Congress's enactment of a 30-day waiting time requirement as an alternative to plenary exhaustion "suggests that Congress understood that some requests for relief may be too urgent to wait for the BOP's process." *United States v. Soto*, 2020 WL 1905323, at *5 (D. Mass. 2020). This is not so. All that the text of the 30-day waiting time requirement suggests is that Congress understood that some requests for relief may be too urgent to be delayed beyond 30 days. Congress could have chosen fewer days than 30 days. It could have chosen no days at all. Congress chose 30 days. And the statute fully empowers the BOP to file a motion on a defendant's behalf at any time before the 30 days elapse.

Put differently, even though Congress expressly empowered courts with authority to reduce a defendant's sentence on grounds of "extraordinary and compelling" circumstances, Congress did not go further to allow a defendant to invoke these same "extraordinary and compelling" circumstances as reason to excuse the minimum 30-day waiting time rule. To the contrary, it contemplated that, even if there were "extraordinary and compelling" reasons for a sentence reduction, a defendant must still abide by the 30-day waiting time rule before seeking relief under section 3582(c)(1)(A).

If I were now to recognize an emergency exception and to do away with any requirement that a defendant first seek the warden's filing of a motion on the defendant's behalf, I would be simply re-writing the law to create an exception that Congress did not enact and did not plainly intend. Accordingly, I conclude that section 3582(c)(1)(A) does not allow for Vence-Small to

10

seek judicial relief until 30 days after she first applied for relief to the warden—that is, until April 30, 2020. I will deny her motion without prejudice to renewal on April 30, 2020.

In the meantime, I request the Government to immediately forward a copy of this ruling to the warden at FCI Hazelton. I am concerned that the warden misunderstood the basis for Vence-Small's relief request and am hopeful that the warden will promptly re-evaluate the request under the proper criteria set forth in the Attorney General's memoranda and consistent with the representations on the BOP website about the efforts being made to evaluate all inmates who may be particularly vulnerable to COVID-19.

Lastly, I note that some courts have waived the exhaustion requirement in light of the Government's consent to waiver. *See, e.g.*, *United States v. Gileno*, 2020 WL 1904666 (D. Conn. 2020). Although section 3582 does not expressly provide for a power of the Government to waive the exhaustion requirement, I would understand a statement by the Government that it waives exhaustion to be the equivalent of a motion by the Director of the BOP for sentence reduction just as section 3582(c)(1)(A) expressly allows.

## CONCLUSION

For the foregoing reasons, the Court DENIES without prejudice the motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). In the event that Vence-Small files a motion for sentence reduction on April 30, 2020, then the Government is invited to promptly file any response or objection, and the Court intends to hold a hearing if requested on the motion at **10:00am on May 1, 2020**. In the event that the Director of the BOP decides in the interim to file a motion on Vence-Small's behalf (or in the event that the Government decides to waive the exhaustion requirement on the BOP's behalf), then the Court would expedite consideration of the motion.

11

It is so ordered.

Dated at New Haven this 20th day of April 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge