UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VANESSA VENCE-SMALL,<br>*Defendant*. | No. 3:18-cr-00031 (JAM) |

**ORDER DENYING MOTION FOR SENTENCE REDUCTION**

Vanessa Vence-Small is a prisoner of the Federal Bureau of Prisons ("BOP") at the FCC Hazelton Secure Female Facility in West Virginia. She is 52 years old and suffers from a number of medical conditions, including a compromised immune system because of a splenectomy as well as type 2 diabetes mellitus and hypertension. In light of her vulnerability to the coronavirus ("COVID-19"), she moves under 18 U.S.C. § 3582(c)(1)(A) for a reduction of her remaining term of imprisonment to a term of home confinement.

I previously denied Vence-Small's motion for release on the ground that she had failed to exhaust the procedures that the statute requires prior to her filing of the motion. *See United States v. Vence-Small*, -- F. Supp. 3d. ----, 2020 WL 1921590 (D. Conn. 2020). Now having done so, Vence-Small renews her motion. I have heard oral argument and received supplemental submissions including an additional filing today.

I will deny the motion once again without prejudice. Because Vence-Small has not shown that any of the staff or inmates at her prison facility are infected with the COVID-19 virus, she has not yet established the "extraordinary and compelling" reasons for a sentence reduction that section 3582(c)(1)(A) requires. In the event that reliable evidence emerges that any staff or

1

inmates at her prison facility test positive or have become ill with COVID-19, I will be prepared to grant a future motion.

## DISCUSSION

The background facts are set forth in my prior ruling on Vence-Small's motion. *See Vence-Small*, 2020 WL 1921590, at *1-3. I will first review the statutory and regulatory framework that governs motions under 18 U.S.C. § 3582(c)(1)(A). Then I will address how these factors apply to Vence-Small in this case.

### *Statutory and regulatory framework*

Federal law allows a court to grant a "compassionate release" motion to reduce a federal prisoner's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Previously it was only the BOP that could file this kind of motion, but amidst widespread complaints about the failure of the BOP to file motions on prisoners' behalf, Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), to allow prisoners the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf. *See United States v. Almontes*, 2020 WL 1812713, at *1 (D. Conn. 2020).

Provided that a prisoner has satisfied the statute's exhaustion requirement, section 3582(c)(1)(A) establishes several criteria for a court to consider when deciding whether to grant the motion. First of all, there has to be no less than "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[1] The statute does not further define this term but instructs courts to consider whether a sentence reduction is "consistent with

---

[1] As an alternative to the existence of such "extraordinary and compelling reasons," section 3582(c)(1)(A) allows for motions to be filed by the BOP on behalf of defendants who are at least 70 years old and have served at least 30 years in prison. 18 U.S.C. § 3582(c)(1)(A)(ii). This alternative is not at issue in this case.

2

applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress has separately directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," while also advising that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In accordance with this instruction from Congress, the Sentencing Commission has issued a policy statement in the U.S. Sentencing Guidelines that sets forth criteria for what constitute "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13 cmt. n.1 (2018). The commentary provides, for example, that "extraordinary and compelling reasons" exist if the defendant "is suffering from a terminal illness" or if the defendant otherwise has a serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Ibid.* cmt. n.1(A). The commentary further provides for a catch-all "Other Reasons" that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Ibid.* cmt. n.1(D).

As numerous courts have recognized, the Sentencing Guidelines have not yet been revised to conform with the First Step Act's authorization for defendants to bring their own motions. Therefore, to the extent that the Guidelines commentary purports to vest exclusive authority with the BOP to make a determination of "Other Reasons," this requirement is no longer applicable, and courts have independent authority to decide whether there are "Other Reasons" that amount to "extraordinary and compelling reasons" to grant a motion for sentence

3

reduction. *See United States v. Marks*, 2020 WL 1908911, at *5-7 (W.D.N.Y. 2020); *United States v. Haynes*, 2020 WL 1941478, at *14 (E.D.N.Y. 2020) (collecting cases); *United States v. Pinto-Thomaz*, --- F. Supp. 3d ----, 2020 WL 1845875, at *2 (S.D.N.Y. 2020) (same); *Almontes*, 2020 WL 1812713, at *3 (same).

Beyond a court's determination whether there exists "extraordinary and compelling reasons" for a sentence reduction, a court must also "consider[] the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Therefore, a court must examine the same factors it did when it initially sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation. *See* 18 U.S.C. § 3553(a). In addition, a court must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

### *Factors applying to Vence-Small*

Vence-Small has not yet established that there are extraordinary and compelling reasons for her to serve the remainder of her imprisonment sentence in home confinement. To be sure, the COVID-19 pandemic is itself extraordinary, having killed tens of thousands of people across the United States in recent weeks. In light of Vence-Small's splenectomy, diabetes, hypertension, and age, it is undisputed that Vence-Small is at a much greater risk than the average person to contract the virus as well as to experience very serious or lethal complications.

What is missing, however, is evidence that Vence-Small is *presently* at more than a negligible risk of contracting the virus or that she would be significantly safer from the virus if

she were granted home confinement as she proposes. There is no evidence yet that COVID-19 has infected any staff or inmates at FCC Hazelton. Although the BOP's website reports positive test results from 50 facilities and 22 residential reentry centers nationwide, it does not report any positive test results for staff or inmates at FCC Hazelton.[2]

To be sure, the amount of testing performed at FCC Hazelton has been very limited. But FCC Hazelton—like other federal prisons—has engaged in extensive and ongoing measures to reduce the risk of COVID-19 entering into its facilities.[3] These measures make it more likely that the explanation for why there are no positive test results is because of the absence of the COVID-19 virus at FCC Hazelton rather than because it is present but has gone undetected for lack of testing. Apart from any testing results, there is no other reliable evidence of sickness among staff or inmates at FCC Hazelton that is likely attributable to the COVID-19 virus.

The lack of evidence of infections at FCC Hazelton is consistent with the reported statistics showing that West Virginia in general has one of the lowest rates of COVID-19 infections among the States in this country.[4] In contrast to the tens of thousands of reported cases in various "hotspots" throughout the United States, the entire state of West Virginia has 1,287 reported cases and 51 deaths from COVID-19. FCC Hazelton is located in Preston County where there have been just 14 reported cases and no fatalities.

---

[2] *See* Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (last visited May 7, 2020). FCC Hazelton includes the Secure Female Facility where Vence-Small is housed as well as the Federal Correctional Institution ("FCI") and United States Penitentiary ("USP") facilities.

[3] *See* Federal Bureau of Prisons, *BOP Implementing Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 7, 2020).

[4] The statistics recited in this paragraph are drawn from the *New York Times*, which keeps state-by-state and county-by-county figures. *See* Josh Katz, Denise Lu & Margot Sanger-Katz, *What Is the Real Coronavirus Toll in Each State?* N.Y. TIMES, https://www nytimes.com/interactive/2020/05/05/us/coronavirus-death-toll-us html?action=click&module=Spotlight&pgtype=Homepage (May 5, 2020) (last visited May 7, 2020). At the hearing on Vence-Small's motion, I asked the parties to advise the Court if they have doubts about the figures reported by the *New York Times*, and no concerns have been raised.

Vence-Small seeks release to a family member's home in a town that is located in Orange County, New York. To date, there have been 9,343 reported cases and 302 fatalities in Orange County. Thus, Vence-Small seeks to leave a part of the country that has few COVID-19 infections for another part of the country that is hundreds of times more heavily infected.

Vence-Small rightly argues that there is a big difference between being confined at a prison where one has almost no control over measures taken to guard against the COVID-19 virus and being subject to home confinement where one can almost fully control all risks of exposure. COVID-19 is particularly insidious because of the manner in which it may be invisibly transmitted by people who are infected but who do not feel or show any ill effect, and prisons are generally like tinderboxes where a virus may be prone to spread rapidly once a single person is infected.

I have considered all these points but still conclude that Vence-Small has yet to show a sufficient current risk to her health to constitute an "extraordinary and compelling" reason as section 3582(c)(1)(A) requires. There is not enough evidence at this time to show that prisoners at the Secure Female Facility at FCC Hazelton are at significant and imminent risk of contracting COVID-19.

Many other courts have concluded that, in the absence of evidence to show that COVID-19 has infiltrated the facility at which a prisoner is located, there are no "extraordinary and compelling reasons" for a court to grant a motion for a sentence reduction. *See, e.g.*, *United States v. Hendry*, 2020 WL 2129246, at *2 (S.D. Fla. 2020); *United States v. Cooper*, 2020 WL 2064066, at *3 (D. Nev. 2020); *United States v. Bhamani*, 2020 WL 1974201, at *2 (E.D. Cal. 2020); *United States v. Feiling*, 2020 WL 1821457, at *7 (E.D. Va. 2020); *but see United States v. Asaro*, 2020 WL 1899221, at *6 (E.D.N.Y. 2020) (concluding that extraordinary and

compelling reasons existed to release 85-year-old stroke victim despite lack of positive test results at BOP facility).

Because of the possibility that circumstances may change and that one day there may be sufficient evidence of COVID-19 infections at Vence-Small's facility, I will address the additional factors that I must consider in order to grant a motion under 18 U.S.C. § 3582(c)(1)(A). To begin, I must consider whether granting Vence-Small release to home confinement is compatible with the principles and purposes of sentencing as outlined by federal law, 18 U.S.C. § 3553(a).

I have considered all these factors. For more than three years, Vence-Small stole a great deal of money from those who trusted her and worked closely with her at a car dealership. She spent the stolen money for lavish personal expenditures. She surely deserved a punitive prison sentence. But I think she has had one, more so because of the lockdown conditions in recent weeks due to the COVID-19 crisis. Her health has suffered already while imprisoned, with a new diagnosis of diabetes and more recent signs that it is worsening.

In my view, the prison sentence that Vence-Small has served to date will advance the interests of deterrence about just as much as if she is required to serve out the 10 more months that remain in her term. And if she continues in prison, any rehabilitation interests will not be served at all but worsened along with her declining health. In short, the purposes of sentencing would be substantially served if Vence-Small were to be released to home confinement at some point between now and the end of her prison sentence.

I must also consider if Vence-Small poses a risk of danger. On the one hand, she does not have any prior convictions. On the other hand, it takes a truly flawed character to steal gobs of money from people with whom one works every day. I can fully understand why the primary

7

victim who worked with her every day for years strongly opposes her release and warns that she will not change her ways. I wish I could be more confident that Vence-Small would not steal again if anyone ever trusts her again with their money.

But the relevant issue for now is whether her risk of recidivism exists for the interim period of months until March 2021 that she would be consigned to electronically monitored home confinement rather than to a prison cell. If Vence-Small is subject to electronic lockdown at her home for that period, I don't see that she will be positioned during that time to take any more innocent people's money.

When I sentenced Vence-Small to a term of 30 months of imprisonment, I did so believing that this term of imprisonment was a "just" punishment. A just punishment should not include an unacceptable risk of exposure to COVID-19 or any potentially lethal disease. That is why I would be prepared to grant Vence-Small's motion for release to home confinement at such time—if ever—that there is reliable evidence of any COVID-19 infections at the prison facility where Vence-Small is located.

## CONCLUSION

For the foregoing reasons, the Court DENIES the motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) without prejudice to renewal upon a showing based on reliable evidence of COVID-19 infections among staff or inmates at the BOP facility where Vence-Small is located. The Government shall immediately report to the Court and counsel if it learns of evidence (whether test results or other indicia) that there are any COVID-19 infections among staff or inmates at the Secure Female Facility at FCC Hazelton.

It is so ordered.

Dated at New Haven this 7th day of May 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge